UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Owen Hobbs,
    Petitioner

vs                                          Case No. 1:01cv720
                                              (Spiegel, J.; Black, M.J.)

Harry K. Russell,
    Respondent

**REPORT AND RECOMMENDATION**

       Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, and respondent's return of writ. (Docs. 1, 3).

**Procedural and Factual Background**

       The 2000 term of the Hamilton County, Ohio grand jury indicted petitioner on one count of murder as defined in Ohio Rev. Code § 2903.02 (A) with a firearm specification. (Doc. 3, Ex. 1). A jury found petitioner guilty as charged, and on July 12, 2000, the court sentenced petitioner to consecutive terms of fifteen (15) years to life for the murder and three years for the firearm specification. (Doc. 3, Ex. 3).

       Petitioner, assisted by counsel, filed a timely appeal of his conviction to the

Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

> I. The jury erred to the prejudice of Defendant-Appellant by finding him guilty of murder under Ohio Rev. Code Section 2903.02(A), as that finding was not supported by sufficient evidence.
>
> II. The trial court erred to the prejudice of the Defendant-Appellant by finding him guilty of murder under Ohio Rev. Code Section 2903.02 (A).
>
> III. The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress the identification evidence.
>
> IV. The trial court erred to the prejudice of Defendant Appellant by allowing the prosecution to dismiss two of the three black jurors.
>
> V. The Trial Court erred to the prejudice of Defendant-Appellant by giving improper jury instructions.
>
> VI. The Trial Court erred to the prejudice of Defendant-Appellant by not sustaining Defendant-Appellant's objections during the prosecution's opening and closing statements.

(Doc. 3, Ex. 5). On May 25, 2001, the Ohio Court of Appeals issued a decision overruling the assignments of error and affirming the judgment of the trial court. (*Id.*, Ex. 7).

Through counsel, petitioner further appealed the judgment to the Ohio Supreme Court, raising essentially the same issues he had presented to the Ohio Court of Appeals. (*Id.*, Exs. 8, 9). On September 5, 2001, the Ohio Supreme Court denied leave to appeal. (Doc. 3, Ex. 11).

Through counsel, petitioner filed the instant petition for a writ of habeas corpus raising the following ground for relief and supporting facts which are quoted verbatim:

> Ground one: The conviction was obtained in violation of Petitioner's

> right to Due Process and right to a fair trial by the prosecutor exercising two peremptory challenges against African Americans in a discriminating fashion.
>
> > Supporting facts: During voir dire the prosecution exercised four peremptory challenges. Two challenges were used against African Americans. When asked for a basis of the challenges, the prosecution was only able to articulate a reason for one of the challenges. That reason was challenged by Petitioner's counsel and then decided w/o a hearing.

(Doc. 1, page 5).

In his return of writ, respondent argues that the petition should be denied because petitioner's ground for relief lacks merit. (Doc. 3).

## OPINION

### Petitioner is not entitled to habeas corpus relief based on his *Batson* claim, asserted as his sole ground for relief.

In his first ground for relief, petitioner asserts that he was denied his constitutional rights when the trial court upheld the prosecutor's use of a peremptory challenge to remove an African-American from the jury panel without articulating a race neutral explanation.[1]

---

[1] In the facts supporting his *Batson* claim, petitioner argues that the prosecution was only "able" to articulate a reason for one of his two challenges to African-American jurors. (Doc. 1, p. 5). This is a misleading statement for this reason. The prosecution did not offer an explanation for the removal of the first African-American juror because the defense did not object to the removal of the first African-American juror, *see* Doc. 3, Ex. 7 at 8. The prosecutor's ability or inability to articulate a reason simply never came up.

In his supporting facts, petitioner also argues that the state trial court failed to provide him with a hearing on his *Batson* claim. (Doc. 1, p. 5). Since petitioner did not raise the hearing

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all

---

issue in the state appellate courts and there is no avenue currently available for raising it in the state system, it is waived and this court is precluded from considering it absent cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). In any event, the state trial judge gave both defense counsel and the prosecution every opportunity to state their positions on the *Batson* challenge. (Tr. 266 -269). Defense counsel did not specifically request an additional hearing and when the trial judge asked if he had anything else to say after making his objection, counsel answered "[n]othing else." (See Tr. 268).

agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

"It is well settled that a state denies a defendant equal protection of the laws when he is tried before a jury from which members of his race have been purposefully excluded." *United States v. Harris,* 192 F.3d 580, 586 (6th Cir. 1999) (citing *Strauder v. West Virginia,* 100 U.S. 303 (1879)). In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court extended this principle to the use of peremptory challenges in the selection of the petit jury, holding that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *See Batson,* 476 U.S. at 85-89. The Court outlined a three-step approach for evaluating a claim that the prosecutor used peremptory challenges to exclude jurors on the improper basis of race. First, the defendant must make a prima facie showing of purposeful discrimination by the prosecutor in the selection of the jury. *See id.* at 96-97; s*ee also Hernandez v. New York,* 500 U.S. 352, 358 (1991) (plurality opinion). A defendant establishes a prima facie case by showing he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Harris,* 192 F.3d at 586 (citing *United States v. Hill,* 146 F.3d 337, 340 (6th Cir. 1998) (quoting *Batson,* 476 U.S. at 96)).

Once the defendant makes a prima facie showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Harris,* 192 F.3d at 586. At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive or even plausible. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam). As the Court explained in *Hernandez*: "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at

360 (plurality opinion).

It is not until the third step that the persuasiveness of the State's justification becomes relevant. *Purkett,* 514 U.S. at 768. At this step of the inquiry, the court must determine whether the defendant has met his burden of proving purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768. The trial court's decision at this step of the inquiry on the ultimate question of discriminatory intent represents a finding of fact to be accorded "great deference" by a reviewing court. *Hernandez,* 500 U.S. at 364 (plurality opinion); *see also Batson,* 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez,* 500 U.S. at 365 (plurality opinion) (quoting *Batson,* 476 U.S. at 98 n.21)). In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)). Deference is particularly warranted in cases where the proffered race neutral explanation centers on the juror's body language, mannerisms, intonation and demeanor, factors which are given to "on-the-spot interpretation" by the trial judge. *See Lyons v. Lee,* 203 F. Supp. 2d 512, 535 (M.D.N.C. 2002) (and cases cited therein), *appeal dismissed,* 316 F.3d 528 (4th Cir.), *cert. denied,* 124 S.Ct. 28 (2003).

On direct review of a state-court judgment, the court may not overturn the trial court's finding on the issue of discriminatory intent unless convinced that the determination was clearly erroneous. *Id.* at 369. In this federal habeas corpus proceeding, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 366 (plurality opinion).

The Ohio Court of Appeals addressed petitioner's *Batson* claim, as follows:

> In his fourth assignment of error, Hobbs contends that the trial court erred by permitting the state to have two black jurors dismissed. We find

6

no merit in this argument. To establish a prima facie case of racial discrimination in the selection of a jury, the defendant must establish that members of a cognizable racial group have been peremptorily challenged and that the facts and any other relevant circumstances raise an inference that the prosecutor has used the peremptory challenges to exclude jurors on account of their race. If the defendant makes a prima facie case of discrimination, the state must then provide a race-neutral explanation for its use of the challenges. A trial court's finding of no discriminatory intent will not be disturbed unless it is clearly erroneous. The victim and the defendant in this case were African-Americans. Hobbs offered no other circumstances to indicate that jurors were being excluded because of their race, other than that they were African-Americans. We assume, without deciding, that Hobbs established a prima facie case of discrimination. Hobbs first objected when a second African-American juror, Ms. Roberts, was excused. The state explained its removal of Ms. Roberts by stating that she was "evasive" and unresponsive to questioning by the prosecuting attorney, and that her body language differed from that shown to Hobbs's counsel. As valid, race-neutral reasons for excusing the perspective juror were given, we cannot say that the trial court's finding of no discriminatory intent was clearly erroneous. Thus, we overrule the fourth assignment of error.

(Doc. 3, Ex. 7 at 8) [citations omitted].

The Ohio Court of Appeals assumed that petitioner had made a prima facie case of discrimination because both petitioner and the juror involved, Ms. Roberts, are African American. The Court recognized that the prosecutor provided facially race-neutral reasons for exercising the peremptory challenge against Ms. Roberts, and thus satisfied the second *Batson* step. Finally, the appellate court concluded that these concerns were "valid" and therefore rejected petitioner's *Batson* claim.

The following exchange took place between the prosecutor and Ms. Roberts, during the jury voir dire:

> Mr. Piepmeier: Are you still employed with the Board of Education, ma'am?
>
> Prospective Juror Roberts: No, I'm retired, and then I started

>working for the National Council on Aging.
>
>Mr. Piepmeier: Have you had any contact, as a juror or victim, or anyone in your family, on any kind of criminal matter?
>
>Prospective Juror Roberts: No.
>
>Mr. Piepmeier: Is there anything you've heard so far about this case that makes you feel uncomfortable as a juror?
>
>Prospective Juror Roberts: No.
>
>Mr. Piepmeier: And you think you could be fair, both to the defendant and to the State of Ohio?
>
>Prospective Juror Roberts: Try, yes.
>
>Mr. Piepmeier: And unlike a civil suit, where you've got the two parties seated in the courtroom, there's really not – there's an open empty chair here, but in a sense, there's no one here for the victim's family that will be just sitting at counsel table. Can you still give the state a fair trial, ma'am?
>
>Prospective Juror Roberts: This is the first time I've been on a jury, and I don't know about what's going on, but I guess I'll learn.
>
>Mr. Piepmeier: Well, I guess the biggest question is: Can you just be fair, to do the right thing, whatever it may be?
>
>Prospective Juror Roberts: (Nodded affirmatively.)

(Doc. 9, Tr. 220-221). The prosecutor later announced that he would like to excuse Ms. Roberts, and defense counsel countered that he was making a *Batson* challenge because she was the second African-American juror the prosecution excused. (Tr. 266-267). The prosecutor explained his reasons for excusing Ms. Roberts:

>This particular juror, Ms. Roberts, when I questioned her, she had her arms crossed. She's the only juror, also that during

> questioning, her answer was such that I even had to ask her if
> – I forget what it was, something about being fair, and she just
> – really she was very noncommital, and I even had to come
> back and ask her again, so she just was not relating very well
> to anything I was asking.

(Tr. 267). The prosecutor then added:

> Well, again, I think her demeanor. . . . But her body language, which I think is something we can articulate, which I'm doing, she crossed her arms when I was talking to her, and she just wasn't answering my questions. She was very evasive.

(Tr. 268). The judge asked the prosecutor if she uncrossed her arms when defense counsel spoke with her, and he assured the judge that indeed she had. (*Id.*). The court asked: "She was open to him and closed to you; is that what you're telling me?" (*Id.*). While the prosecutor assured the court that was his observation, defense counsel disputed it. (*Id.*). The trial court overruled the objection and excused Ms. Roberts. (Tr. 269).

Although the cold record does not demonstrate that Ms. Roberts was evasive in answering questions, her hesitancy or apprehension about the judicial process (which was unfamiliar to her) and her role in it may have been interpreted that way. The prosecutor also seemed to believe that her body language of crossing her arms when he spoke with her indicated that she was hostile toward him and not as likely to listen objectively to the prosecution's case. He further implied that her uncrossed arms when addressing defense counsel indicated that she was more willing to embrace the defense position. *Cf. Blades v. Miller,* 167 F. Supp.2d 628, 637 (S.D.N.Y. 2001) (juror's crossed arms when addressing prosecutor, and not defense counsel, signaling hostility to state's case, considered legitimate basis for exercise of peremptory challenge).

Both the trial judge and the state appellate court found some of the prosecutor's proffered explanations legitimate and credible. Petitioner has failed to demonstrate by clear and convincing evidence that these findings are erroneous, *see* 28 U.S.C. § 2254(e)(1), and this Court concludes that the record supports these findings.

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his *Batson* claim resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.). Moreover, petitioner has not pointed to or submitted clear and convincing evidence of purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be accorded the state court's conclusion that the prosecutor did not discriminate on the basis of race in exercising the peremptory challenge against Ms. Roberts. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez*, 500 U.S. at 364-66; *Batson*, 476 U.S. at 98 n.21. Petitioner is, therefore, not entitled to habeas corpus relief with respect to his *Batson* claim asserted as his sole ground for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's *Batson* claim which this Court has considered on the merits, because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether this claim should have been resolved in a different manner or that the issue presented was "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

| | |
|---|---|
| Date: May 18, 2004 | S/Timothy S. Black |
| hr | Timothy S. Black |
| J:\ROSENBEH\2254(2004)\01-720batson.wpd | United States Magistrate Judge |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

Owen Hobbs,
    Petitioner

vs                        Case No. 1:01cv720
                            (Spiegel, J.; Black, M.J.)

Harry K. Russell,
    Respondent

---

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).